Peck, J.
Three questions are made upon the agreed statement •of facts :
1. Was the fractional part of school district No. 1, in Amherst township, separated by the school law of March 14, 1853 (Swan’s Stat. 83G, see. 1), from that portion of said district, lying within Russia township, which, before that time had been attached to it, or was some further action required to perfect a separation ? Prior to 1853 the trustees of the several townships were required, by the 'laws in force, to lay off their respective townships into school-districts, in the manner best calculated for convenience and the promotion of the interests of common schools, describing their boundaries, and giving to each a number to designate and distinguish it. And whenever the public interest and convenience required it, such district might be laid off from parts of two or more townships, *by the united action of the trustees of the respective townships. It appears from the agreed statement, that as early as 1824 or 1825, four tracts of land situate in Russia township, under the laws then in force, and by the mutual act of the trustees of *384 both townships, had been attached to -the fractional district in¡ Amherst, thereby forming said school-district No. 1. This connection continued up to the passage of the law of 1853, with the exception, perhaps, of a small part of two of the tracts, which at some time, but when does not distinctly appear, had been attached to other districts in Eussia township.
"What effect did the school law of 1853 have upon this district?' Was the district, as the defendants insist, thereby separated, and the fractional parts of which it was composed restored to the townships from which they were taken, as so many sub-districts of those-townships ; or did it, as is claimed by the plaintiff, remain as it was-originally established, subject to be changed thereafter, under the-provisions of section 16 of that act? That part of section 1 which bears upon the question is as follows: “That hereafter each and every organized township in the state shall compose but one school-district, for all purposes connected with the general intei’ests of education in the township, and shall be confined to the management and control of a board of education ; and the several school-dis'ricts, and fractional parts thereof, which now are, or may hereafter bo, established in the several organized townships of this state, shall be regarded as sub-districts, and be confided to the-management and control of local directors, as hereinafter provided.” The words “and fractional parts thereof” undoubtedly refer to school-districts formed, or to be formed, from parts of different townships. At the first glance, it would seem that the view of the counsel for defendants is correct; but a careful perusal shows, we think, that such a construction not only leads to absurd consequences, but is inconsistent with the literal interpretation of the act itself. The section, thus construed, would *ereatemany sub-districts too small to be operated under the law, thereby rendering it necessary to remodel the other districts, and in other instances, the public interest and convenience still requiring it, the-same district would have to be reconstructed in the same way,, under section 16 of that act. Again, section 1, above quoted, provides not only that the fractional parts which now are, but also the fractional parts which shall hereafter bo, established, shall be regarded as sub-districts. If, then, a district should be formed under the provisions of the law of 1853, out of two adjoining townships, and this construction was true, the district thus created would be two sub-districts — oue -belonging to each township — yet- *385 section 16 denominates it one sub-district. Again, it is the fractional parts (plural) of a district, and not the fractional part, that are to be regarded as a sub-district — parts of two or more, and not part of one township. We are therefore of the opinion that this part of the section merely provides that what had been districts under the old system should thereafter be regarded as sub-districts. Under the old law, they were under the management and control of a local directory, and under the new law, they were to be under the general management of the township board of education, and the particular control of a local directory. Upon a careful examination of the act of 1853, we are therefore of the opinion that sub-district No. 1, in Amherst township, was not dismembered by the operation of that act.
This brings us to consider the second proposition: Was such a separation effected by the acts and proceedings of the board of education for Amherst township, set forth in the agreed statement? The proceedings for this purpose, as set forth in the agreed statement, are as follows: On the third Monday (being the 17th day) of April, 1854, the board of education for Amherst township held1 a regular session, and, among other things, “ voted ” “ that that part of sub-district No. l,in Amherst township, situate in Russia township, be set off to Russia township,” and adjourned *to meet again at South Amherst, on the 3d of May, 1854. On the 3d of May, 1854, the same board met at the house of A. IT. Redington, and the record produced and proved, describes it to have been “ an adjourned meeting of the township board of education for Amherst township,”' and at which it was voted “ that sub-district No. 1, in Amherst township be changed so as to be composed of the territory of which said sub-district is now composed, lying in the township of Amherst only.” The members of the board of education of Russia seem to have been notified of this meeting by the clerk of Amherst, but only two of them attended, and they took no part in the meeting. The plaintiff in error insists that these proceedings did not in law effect a separation of the sub-disdriet: 1. Because they were not done or attempted at a proper time and place; 2. Because such severance could only be effected by the concurrence of both townships. The 12th section of the act of 1853, by inference, prohibits any change or alteration o’f sub-districts, except at a regular session of the board of education. The board, by section 12, are authorized to hold regular sessions on the third Mondays of April and Septerd *386 ber of each year, at the usual place of holding elections, or some other place , in the immediate neighborhood, convenient for the ■transaction of business relating to the schools, with power to adjourn from time to time, besides providing for special sessions. 'The first of the sessions above stated, was held on the day fixed by law for holding regular sessions of the board, and the second was .■an adjournment from the regular session. It was competent for the board, under sections 12 and 14, to alter or change the sub-districts at either of these sessions. In regard to the objections to this latter meeting, that it is without date, and purports to have been held at the house of A. H. Redington, when the adjournment was to meet at South Amherst, we have to observe that the record shows that the meeting was held in pursuance of an adjournment, and is proved to have been in fact held on the *3d day of May. In the absence of all proof to the contrary, we must presume that it was held in conformity to the order of adjournment, and at a proper and suitable place. Every reasonable intendment should always be made to sustain such proceedings, the conduct of wdiieh are ordinarily confided to persons altogether unskilled in forms and technicalities. We are therefore of opinion that the action of the board of education of Amherst township, as shown by the agreed case, in changing sub-district No. 1, did separate it from the portion situate in Russia township, provided such a separation could legally be made without the concurrence of the board of education of Russia township. Whether such concurrence on the part of Russia township was, in law, necessary to a valid separation, presents a question of much difficulty, and as to which much may be said upon both sides, .arising out of the nature, object, and purpose.of the. connection; the interest, privileges, and obligations of the several parts, while that •connection continues,and the results which ensue upon its termination. The question is not of much practical importance since the amendatory and supplemental act of April 17, 1857, and we forbear to decide the question at this time, because it is not necessary that we ■.should do so, as we are satisfied that in no event and under no cir■cumstanees, as the law then was, could the board of education for Amherst have imposed, by way of tax or assessment, upon the resident tax-payers of Russia township, any portion of the cost of ’building the school-house. The statute provides that the sehool,’house, when erected, shall be the property, and when disused, sold jfor the benefit, of the township in which it is located, and while *387 express provision is made for the imposition of taxes through the agency of the board of the adjoining township, for the biro •of teachers and the maintenance of the school in such, sub-district, none whatever is made for taxing those without the lines of the township in which the house is to be located, for the cost of its erection. Nor is it equitable or proper that ■*there should have been any such provision. The connection is only temporary, and so long as persons without the township participate in the benefits of the school, they are required to contribute to-its maintenance and support; but they ought not to be required to pay for a house which is property of the other town■ship, and to continue their property when the connection is terminated. The statute of 1853, then, docs not confer upon the board ■of education the right to assess taxes or impositions upon persons .and property without the lines of their township, nor does it confer the power upon the board of the adjoining township, to estimate the cost of a school-house to be located in another township, and much less, to apportion any part of its cost upon the persons or property in their township. The sub-district referred to in said section 23, must be limited to that portion of the sub-district over which the board of education have such power. We hold, therefore, that the board of education of Amherst, in 1854, in limiting the ■special imposition to the land lying within that township, did not err, even if the sub-district still covered a part of the township of Russia.
The supplemental act of April 17,1857 (54 Ohio L. 236, sec. 10), passed nearly three years after these transactions occurred, prohibiting the dissolution, change, or alteration of such sub-districts, without the concurrence of the board of education of the several townships that had territory included within it, and authorizing taxation co-extensive with the sub-district, for all moneys expended therein, can not affect these questions, for the reason, that the law is prospective in its terms, and were it otherwise, would be obnoxious to the constitutional inhibition of retroactive laws. It may be regarded, however, as a legislative admission, that the law of 1853, did not require the concurrence of all the townships interested, to a dissolution of the connection; nor authorize taxation without the township, for a school-house situate within it.
This brings us to a consideration of last question propounded Nn the agreed statement: “ Did the certificate sent by the *388 town clerk of Amherst township to the auditor warrant him im levying the tax in question, and of doing it wholly upon property-lying within so much of said district as lies in Amherst townshij)?” The objections urged to the sufficiency of the certificate, do not seem to regard its form so much as its substance. It is intimated in. the argument, that the vote certified, was passed at a meeting held! on the 27th of May, and the certificate does not contain any statement. that the board deemed it equitable and just to assess that amount against the sub-d.strict. The board, in estimating tbeamounts to be raised annually for school praiqmses, are not restricted to the regular session of the board; but may discharge that duty at either a regular, adjourned, or special session, and the' only limitation seems to be, that the several amounts to be raised for school purposes, shall be certified to the auditor on or before the-first Monday in June, of the same year. Nor need-the certificate contain a statement, that the board deemed the amount certified, a-just and equitable imposition uj>on the sub-district. The statute-(sec. 23) merely requires that the amount shall be certified, with a-map of the lands and names of the tax-payers of the sub-district. The amount was certified with a list of the taxpayers, prior to the-first Monday in June, 1854, and we hold this a substantial compliance with the statute. But the objections mainly relied on are, that the certificate purports, on its face, to impose the burden upon-only a part of the sub-district, and also that it casts the whole estimated cost instead of only a part of the estimate, upon the sub-district. The objection that it imposes the burden upon only a part of the sub-district has boon noticed already. As the law then, was, it could only have been imposed upon that part of the district, which lay within the limits of Amherst township. But it is also-said that the certificate assesses the entire instead of only a part of the estimated cost of the school-house against the sub-district, and; the argument *is, that section 23 merely authorizes the board to assess such portion of as they may deem just and equitable, but not the whole cost, upon the sub-district. The power conferred upon the board is purely discretionary, and to be exercised by them with a view to equalize the burdens of taxation among the various sub-districts, up to the time when the amount is so certified. The-board, in this case, have said that in their opiinion, it is but just and equitable for the sub-district to pay the entire cost, but upon, what grounds is not disclosed, nor is it material that it should be *389 'Cuses may be supposed in which such a determination would be just and equitable, and we are bound to presume that such a case was before them. The argument drawn from the expression “ such ;portion as they may deem equitable,” etc , needs but little comment from us. It admits that the board, in their discretion, may apportion to the sub-district all but the last cent, and if that cent is left to be paid by the township at large, the restriction is satisfied. •Such a construction leads to absurd and insignificant results, and is not to be countenanced. Where, in the opinion of the board, a ■sub-district in which a school-house is to bo erected, has not therefore borne a reasonable share of the burden of taxation for such purposes, in comparison with other sub-districts in the township, they may, say section 23, certify such portion of the amount as they may deem just and equitable to the county auditor, to be as•sessed upon the duplicate against the property in the sub-district; and we hold that if the board, in such case, think it just and equitable to estimate and certify the whole, they need not stop a cent or two short, on account of the words “ such portion of the amount.”

Judgment affirmed.

Brtnkerhorr, C. J., and Scott, Sutlier, and G-holson, JJ., concurred.